UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:09-CR-00002-TBR

UNITED STATES OF AMERICA                                                                                   PLAINTIFF

v.

DECORICK CURRY                                                                                              DEFENDANT

**OPINION AND ORDER**

This matter is before the Court upon Defendant's Motion to Dismiss Indictment (Docket #25). The United States has responded (Docket #27). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is GRANTED without prejudice.

On January 5, 2009, a federal grand jury returned a four-count indictment against Defendant Decorick Curry, also known as "Pee Wee," charging him with possession with intent to distribute crack cocaine, cocaine, and marijuana, and criminal forfeiture. At that time, Defendant was confined to the Dismas House, a halfway house for federal and state offenders, for a parole violation related to state offenses.

A federal arrest warrant was then issued for Defendant. On January 9, 2009, acting pursuant to that warrant, detectives from the Louisville Metro Police Department removed Defendant from the Dismas House and transported him to Jefferson County Corrections. On January 12, 2009, Deputy United States Marshals transported Defendant to the United States Courthouse in Louisville, Kentucky. The presiding Magistrate Judge called the matter for initial appearance, but Defendant did not appear before the court. Upon hearing from the Assistant United States Attorney, the Magistrate Judge expressed concern that Defendant was brought to federal court without a writ of *habeas corpus ad prosequendum*, requested that Defendant be appointed counsel, and directed the United States to return to court later that day with an

explanation for what had transpired.

That same day, Defendant refused representation by a public defender. The United States Attorney then conferred with Defendant's private defense counsel. Defendant expressed his desire to be able to appear before the state parole board later that week. The United States Attorney then instructed the Marshal's Office to return Defendant to state custody. Presently, Defendant is serving his state sentence at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky. Defendant now moves to dismiss his indictment under the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. app. 2.

The IAD is an interstate compact that "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). The purpose of the IAD is to minimize the interruption of a prisoner's ongoing prison term in the sending State by providing expeditious delivery of the prisoner to the receiving State for trial. *Id.* The United States is a party to the IAD. *See* 18 U.S.C. app. 2, § 2. Article IV(e) of the IAD provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. 2, § 2.

In *Alabama v. Bozeman*, the Supreme Court held it was a violation of Article IV(e) of the IAD to interrupt a defendant's imprisonment to bring him to a receiving State for the purpose of

arraignment and then return him immediately to his original place of imprisonment. 533 U.S. at 153-54. Where a defendant is returned to his original place of imprisonment before trial is had, article IV(e) necessitates that the indictment against him in the receiving State be dismissed. *Id.* at 156. Here, the United States concedes that an IAD violation occurred when Defendant was transferred from state custody to federal court and then promptly returned to state custody without trial. Therefore, the only question before the Court is whether the indictment should be dismissed with or without prejudice.

Under section 9 of the IAD, if the transfer of a defendant violates the IAD and the receiving State is the United States, then the Court must consider three factors, among others, when determining whether to dismiss the indictment with or without prejudice. 18. U.S.C. app. 2, § 9. These factors are: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the administration of the agreement on detainers and on the administration of justice. *Id.* at § 9(1).

In considering the seriousness of the offense, courts look to the conduct charged and the potential sentence of the charges in the receiving state. *See United States v. Ferreira*, No. 1:05-CR-92-3, 2009 WL 311136, at *9 (E.D. Tenn. February 6, 2009); *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005). Defendant is charged with serious federal offenses, including possession with intent to distribute fifty grams or more of crack cocaine, cocaine, and marijuana. The crack cocaine charge carries a ten-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A). The cocaine charge carries a maximum sentence of twenty years, 21 U.S.C. § 841(b)(1)(C), and the marijuana charge carries a maximum sentence of five years, 21 U.S.C. § 841(b)(1)(D).

The facts and circumstances that led to the dismissal are outlined above. Here, the federal arrest warrant acted as a detainer. "The United States need not file a detainer in order to obtain custody over a state's prisoner." *United States v. Crozier*, 259 F.3d 503, 513 (6th Cir. 2001). The procurement of a writ of *habeas corpus ad prosequendum* would have been sufficient to bring Defendant before the federal court. However, where the United States chooses to file a detainer, the IAD unquestionably attaches. *Id.* Here, there is no evidence of improper motive by the United States. Furthermore, the United States took immediate action to rectify its error by preparing and presenting a renewed arrest warrant for Defendant to the Magistrate Judge and petitioning for a writ of *habeas corpus ad prosequendum*. These facts tend to diminish the circumstances of the United States' violation.

The final consideration for the Court is the impact of re-prosecution on the administration of the IAD and the administration of justice. Defendant argues that to allow for re-prosecution in this case would be the equivalent of stating that violations of the IAD bear no consequences. The Court disagrees. Regardless of the Court's ruling, the United States is not absolved of its duty to comply with the requirements of the IAD and prevent future violations. In this case, Defendant does not argue that he suffered any harm as a result of the violation. Therefore, the Court finds that the impact of re-prosecution is minimal.

In conclusion, the Court finds that the statutory factors weigh in favor of dismissal without prejudice. The charges against Defendant are serious. While there is no question that the violation was improper, the facts and circumstances of the violation demonstrate that the United States harbored no improper motive against Defendant and quickly sought to remedy its error. Finally, Defendant has not argued that he was personally prejudiced in any way by the

violation.

       For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED without prejudice.